UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                      Case No. 11-11221

LEO H. BIBIN, Jr., individually and in his        HON. AVERN COHN
capacity as the personal representative
of the Estate of Diane c. Vizzaccero,
JOAN A. BIBIN, PAUL HUNT, ROBERT
McCRACKEN, BRIGITTE McCRACKEN,
CJW, LLC, and the MACOMB TREASURER,

    Defendants.
_____/

**<u>MEMORANDUM AND ORDER</u>**
**<u>GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 16)</u>**[1]

### I. Introduction

This is an action by the United States of America (the government) to foreclose on three properties[2] to satisfy a judgment entered against defendant Leo H. Bibin, Jr. (Bibin)[3] for failing to collect and pay over FICA taxes from the wages of employees of The New Tannery, Inc. (Tannery), a company owned by Bibin. After Bibin failed to pay the taxes and they were assessed, a federal tax lien became attached to all property

---

[1]The Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]The properties are located at 23215 Hoover, Warren, Michigan (the "Hoover Property"), 39712 Duluth, Harrison Township, Michigan (the "39712 Duluth Property"), and Duluth, Harrison Township, Michigan (the "Duluth Property"). Both Duluth properties are vacant lots. The Hoover property is a small commercial property.

[3]Bibin is proceeding pro se.

owed by Bibin. In a prior related action, the government obtained a money judgment against Bibin for the unpaid taxes. The government also sought to enforce its tax lien against property located at 39723 Duluth, Harrison Township, Michigan, whose record title owners are Frederick Rheeder and Lu Ann Rheeder, and which is subject to a mortgage owned by Wells Fargo Bank. United States v. Bibin, 09-13388 (Bibin I). After discovering that Bibin owned other property in his name, namely the two vacant lots on Duluth in Harrison Township and the Hoover Property, the government obtained a final money judgment against Bibin in Bibin I and a stay so that the government could pursue the other three properties to satisfy its tax liens. See Docs. 50 and 54 in Bibin I.

Before the Court is the government's motion for summary judgment, seeking a determination that (1) its liens attach to the three parcels of property, (2) the government is entitled to enforce its liens against the parcels and upon sale of the parcels, apply the proceeds to satisfy the tax liens, less any taxes due to the Macomb County Treasurer. Bibin is the only defendant who has filed a response to the motion.[4] For the reasons that follow, the motion is GRANTED. The government shall submit an appropriate judgment.

## II. Background[5]

### A. Facts Relating to Tannery

---

[4] The clerk entered defaults against defendants Paul Hunt, Robert McCracken, Brigitte McCracken, CJW, LLC. Doc. 15. The Macomb County Treasurer has apparently not objected to the relief requested by the government.

[5] Some of the background is taken from the Court's summary judgment order, Doc. 34, in Bibin I. The balance of the background is taken from the government's summary judgment papers.

Tannery was incorporated in Michigan in 1992, by Diane "Chris" Vizzaccero.  In 1995, Bibin became president of the company.  After Vizzaccero's death in 2001, Bibin became the sole officer of the company, as well as 100% owner.  Bibin remained the sole officer of the company, as well as the 100% owner until Tannery declared bankruptcy and was sold to a new owner.  Bibin had check-signing authority, signed federal tax returns, and admitted that he was responsible for paying payroll taxes.

Bibin became aware that Tannery had unpaid taxes as early as May 2001.  As president and owner of the company, Bibin's responsibilities included supervising its business operations, including its financial policy.  Bibin had discussions with the outside accountants regarding the unpaid tax liabilities and was responsible for communications with the IRS.  Despite the outstanding tax liabilities, Bibin allowed the company to pay other obligations, including payroll, utilities, and supplies.

Tannery operated under a policy to pay what it perceived to be more important and urgent bills before paying tax liabilities.  Despite Tannery losing money in 2001 and 2002 and eventually declaring bankruptcy in 2005, all employee payrolls were paid.

On the dates below, the government made assessments against Bibin as a responsible person of Tannery for the tax periods ending 12/31/2001, 12/31/2002, 3/31/2003, 6/30/2003, 9/30/2003, 12/31/2003, 9/30/2004, 12/31/2004, 3/31/2005, 9/30/2005, and 12/31/2005, as set forth below, for the tax periods:

| Quarter Ending | Assessment Due | Assessed Amount | Balance as of June 1, 2010 |
| --- | --- | --- | --- |
| 12/31/2001 | 5/17/2004 | $9,835.38 | $0.00 |
| 12/31/2002 | 5/17/2004 | $12,018.11 | $16,342.27 |

| 3/31/2003 | 5/17/2004 | $9,674.05 | $13,904.90 |
| --- | --- | --- | --- |
| 6/30/2003 | 5/17/2004 | $9,536.21 | $13,706.81 |
| 9/30/2003 | 5/17/2004 | $3,274.11 | $4,560.81 |
| 12/31/2003 | 3/13/2006 | $8,082.02 | $10,107.30 |
| 9/30/2004 | 3/13/2006 | $7,019.65 | $9,106.79 |
| 12/31/2004 | 3/20/2006 | $4,187.06 | $5,424.68 |
| 3/31/2005 | 2/25/2008 | $3,311.94 | $3,691.05 |
| 9/30/2005 | 2/25/2008 | $1,106.53 | $1,233.19 |
| 12/31/2005 | 2/25/2008 | $1,933.08 | $2,154.35 |
| **Total as of June 1, 2010** | | | $80,232.15 |

The IRS issued notice of each of these assessments to Bibin and made a demand for payment. Bibin did not pay. In Bibin I, the Court entered a final judgment against Bibin in the amount of $80,232.15.

### B. Facts Relating to the Properties at Issue

#### 1. The Hoover Property

The Hoover Property is legally described as follows:

Lots 25 and 26, Supervisor's Plat of Jacobs Farm, as recorded in Liber 24, page 4 of Plats, Macomb County Records.

Tax Item No. 13-27-477-037.

Bibin acquired title and ownership of the Hoover Property in a deed dated September 29, 1999, and recorded on June 7, 2000, in the Macomb County Register of Deeds at Liber 9582, Pages 794-795 ("Hoover Deed"). The Hoover Deed conveyed the Hoover Property from Watters Holding Company, Incorporated, formerly known as

4

Watter's Tool Company, to Bibin.

## 2. 39712 Duluth Property

The 39712 Duluth Property is legally described as follows:

Part of Lot 90, CLINTON RIVERSIDE SUBDIVISION, according to the plat thereof as recorded in liber 4, page 95 of Plats, Macomb County Records, described as follows: Commencing at the southwest corner of Lot 93; thence south 13 degrees 57 minutes 30 seconds east 150.50 feet to the point of beginning; thence north 76 degrees 02 minutes 30 seconds east 119.56 feet; thence south 13 degrees 57 minutes 30 seconds east 61.78 feet; thence south 42 degrees 34 minutes west 130.30 feet; thence along a curve to the right with 7.17 foot radius and long chord bearing north 75 degrees 41 minutes 15 seconds west 12.63 feet; thence north 13 degrees 57 minutes 30 seconds west 127.50 feet to the point of beginning.

Tax Item No. 17-12-17-301-017

Bibin acquired an interest in the 39712 Duluth Property under a land contract dated November 3, 1988, and recorded on November 9, 1988, with the Macomb County Register of Deeds at Liber 4539, Pages 450-453 ("1988 Land Contract"). In the 1988 Land Contract, Robert McCracken and Brigitte McCracken (the "McCrackens") agreed to convey the 39712 Duluth Property to "Leo H. Bibin, Jr., a single man and Diane C. Vizzaccero, as joint tenants with full rights of survivorship, not as tenants in common." After Diane C. Vizzaccero died, Bibin acquired he interest under the 1988 Land Contract. He then completed all required payments under the 1988 Land Contract. However, the McCrackens mistakenly conveyed the 39712 Duluth Property to both Bibin and Diane C. Vizzaccero in a deed dated September 30, 2008, and recorded on September 30, 2008, in the Macomb County Register of Deeds at Liber 19505, Pages 878-879 ("39712 Duluth Deed").

### 3. The Duluth Property

The Duluth Property in Harrison Township, Michigan, is legally described as follows:

> Parcel B. A part of Lot 90 and 91, Clinton Riverside Subdivision, Harrison Township, Michigan as recorded in Liber 4, Page 95 of Plats, Macomb County Records, as follows: beginning at a point in the West line of Lot 90 (East line of Duluth Road 60.0 feet wide) measured South 13 degrees 57 minutes 30 seconds East 80.50 feet from the Northwest Corner of Lot 92, thence North 76 degrees 02 minutes 30 seconds East 144.48 feet; thence South 05 degrees 38 minutes 20 seconds West 119.56 feet to the point in the West line of Lot 90; thence North 13 degrees 57 minutes 30 seconds West 70.0 feet to the point of beginning.
>
> Tax Item No. 17-12-17-301-024

Bibin acquired title and ownership of the Duluth Property in a deed dated July 17, 2001, and recorded on September 6, 2001, in the Macomb County Register of Deeds at Liber 10710, Pages 11-12 ("Duluth Deed"). The Duluth Deed conveyed the Duluth Property from Diane C. Vizzaccero to Leo H. Bibin, Jr., and Diane C. Vizzaccero, as joint tenants with rights of survivorship. When Diane C. Vizzaccero died, Bibin became the sole owner of the Duluth Property.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party's response "must set forth specific facts showing that there

is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

## IV. Analysis

### A. The Assessments are Valid and Tax Liens Attached to the Three Properties

Under its statutory authority to make assessments of unpaid taxes, see 26 U.S.C. § 6201 et seq., the IRS made the assessments noted above. Those assessments are evidenced by Certificates of Assessments, Payments, and Other Specified Matters, Form 4340 ("Certificates of Assessment"), which are attached as Exhibits 1a-1k of the government's motion. These Certificates of Assessment are sufficient to prove that the IRS made its assessments against Bibin on the dates indicated (the "23C" date listed on the Certificates of Assessment), and that it made these assessments according to the requirements of the Internal Revenue Code. See, e.g., Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992). In addition, the government has already obtained a judgment in the related case, Bibin I, in the amount of those liabilities. To the extent Bibin argues that the assessments are incorrect, such

an argument is precluded based on the Court's judgment in Bibin I.

Because the assessments are valid, the government's tax liens arose on February 23, 2004, May 17, 2004, March 13, 2006, March 20, 2006, and February 25, 2008, and attached to the Hoover, 39712 Duluth and Duluth Properties. A federal tax lien arises when "any person liable to pay any tax neglects or refuses to pay the same after demand." 26 U.S.C. § 6321. The lien arises when the taxes are assessed and remains valid until the assessed amount "is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. The amount of a lien includes the assessed amount, as well as "any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto" and attaches to "all property and rights to property" of the taxpayer, including after-acquired property. 26 U.S.C. § 6321; see also State Bank of Fraser v. United States, 861 F.2d 954, 963 (6th Cir. 1988). Once the government files a "Notice of Federal Tax Lien," its lien is valid against all parties according to the ordinary "first in time," first in right principles. United States v. McDermott, 507 U.S. 447, 450 (1993); 26 U.S.C. § 6323.

Because the IRS made assessments of unpaid trust fund taxes against Bibin on February 23, 2004, May 17, 2004, March 13, 2006, March 20, 2006, and February 25, 2008, when Bibin had record title of the Hoover Property and the Duluth Property, the government's assessment liens attached immediately to these properties. They also attached immediately to Bibin's equitable interest in the 39712 Duluth Property under the 1988 Land Contract. When the United States filed notice of its tax liens for the periods ending 12/31/01, 3/31/02, 6/30/02, 12/31/02, 3/31/03, 6/30/03, and 9/30/03, on August 5, 2004, and for the periods ending 12/31/03, 9/30/04, and 12/31/04, on June

25, 2007, and for the periods 3/31/05, 9/30/05, and 12/31/05 on January 24, 2011, those liens became valid against all subsequent interests.

## B.  The Tax Liens Have Priority

With respect to the Hoover Property, Bibin has been the sole owner since 2000. No other party to this action, aside from the government and the Macomb County Treasurer, who the government concedes has a senior lien under 26 U.S.C. § 6323(b)(6) based on unpaid taxes, has shown that it has a valid interest in the Hoover Property.

As to the 39712 Duluth Property, Bibin acquired an interest through the 1988 Land Contract, which specified that the McCrackens agreed to sell the 39712 Duluth Property to Leo H. Bibin, Jr., and Diane C. Vizzaccero, as joint tenants with rights of survivorship.  Upon Vizzaccero's death in 2001, Bibin acquired her interest.  Bibin then completed all the payments required under the contract.  Accordingly, in 2008, the McCrackens should have conveyed the 39712 Duluth Property to Bibin alone. However, they mistakenly conveyed the 39712 Duluth Property to both Leo H. Bibin, Jr., and Diane C. Vizzaccero.  "Delivery of a deed is essential to pass title.  The whole object is to indicate the grantor's intent to give effect to the instrument."  Resh v. Fox, 365 Mich. 288, 291 (1961).  Delivery to one grantee raises the presumption that it was delivered to other grantees. See, e.g., Mayhew v. Wilhelm, 249 Mich. 640, 646 (1930). However, a deed may not be delivered to a person after her death and such a deed is invalid. See In re Reason's Estate, 276 Mich. 376, 380 (1936).  In the case of a property conveyed to multiple persons, the deed still remains effective as to persons then living.  Hopkins v. Slusher, 266 Ky. 300 (1936).  Because the 39712 Duluth Deed

purported to convey the 39712 Duluth Property to Vizzaccero 7 years after her death, it is invalid as to her, but valid as to Bibin, who owned half of the 39712 Duluth Property. As to the remaining half, because Bibin fully performed on the 1988 Land Contract, he is the owner of that portion of the 39712 Duluth Property.[6]

As to the Duluth Property, Bibin acquired the property in 2001 as a joint tenant of Diane C. Vizzaccero. As the deed specifies that the property is being conveyed to them as joint tenants with rights of survivorship, Bibin became the sole owner of that property by operation of the survivorship clause when Vizzaccero died. See, e.g., Albro v. Allen, 434 Mich. 271, 275 (1990). Accordingly, Bibin is the sole owner of the Duluth Property, subject to the government's liens.

### C. The Government Can Enforce the Tax Liens

Finally, it is clear that the Internal Revenue Code "authorizes the institution of a civil action in federal district court to enforce a lien 'to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax.'" 26 U.S.C. § 7403(a); United States v. Nat'l Bank of Commerce, 472 U.S. 713, 720 (1985) (quoting § 7403(a)). Section 7403(c) further provides that:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property,

---

[6]As the government points out, even if the 39712 Duluth Deed was valid and should be enforced, Bibin is the true and equitable owner of the entire 39712 Duluth Property. If the 39712 Duluth Deed was valid, it would create a tenancy in common between Bibin and Vizzaccero since it did not specify the kind of tenancy created. M.C.L. § 544.44. Upon Vizzaccero's death, her interest would pass by the laws of intestacy, either to her heirs, or as otherwise provided by her will. Here, her will provides specifically that her real property would be passed to Bibin.

10

by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).  This section gives the Court authority to determine the validity of the United States' federal tax liens, as well as claims of other parties, and to order the property sold and the sale proceeds applied toward the parties' interests, according to lawful priorities.  See Hatchett v. United States, 330 F.3d 875, 884 (6th Cir. 2003) ("In a proceeding under § 7403, the district court adjudicates all matters involved, makes a final determination of the claims, and decrees a sale of the property if the Government's claim is established.").

Bibin has failed to show a reason as to why summary judgment should not be entered in favor of the government.  As noted in the government's reply, none of Bibin's arguments carry the day for him.

SO ORDERED.

 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  December 22, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Leo H. Bibin, Jr., 23215 Hoover, Warren, MI 48089 on this date, December 22, 2011, by electronic and/or ordinary mail.

 S/Julie Owens
Case Manager, (313) 234-5160